IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRACY A. SAVOY            *

     Petitioner           *

          v.           *      Civil Action No. DKC-13-751

FRANK BISHOP and
BRIAN FROSH,           *
  *Attorney General of The*
*State of Maryland*           *

     Respondents           *
                   ***

## MEMORANDUM OPINION

Presently pending and ready for resolution is the Petition for Writ of Habeas Corpus filed by Tracy A. Savoy, claiming that the sentence imposed in state court is illegal under Maryland Rule 4-243(c) because the agreement entered into by Mr. Savoy states that he would "only be receiving 30 years."  ECF No. 1 at 6.  After a hiatus of several years during which the timeliness of the petition was debated and resolved, the merits are now before the court.

On February 4, 2020, Respondents filed a second supplemental answer to the above-captioned Petition for Writ of Habeas Corpus asserting that the sole claim raised by Petitioner is an inadequate basis for federal habeas relief as it relies entirely on Maryland State law.  ECF No. 43.  Petitioner, through appointed counsel, filed a reply urging this court to construe Petitioner's claim as one asserting a violation of the Fourteenth Amendment's due process clause.  ECF No. 48.  No hearing is necessary to resolve the pending matters.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).  For the reasons stated below, the Petition is DENIED and DISMISSED.

**BACKGROUND**

**A.     State Court Proceedings**

Mr. Savoy entered into a plea agreement with the State's Attorney's office in Charles County, Maryland in connection with charges of attempted first-degree murder, use of a handgun in a commission of a felony, and conspiracy to commit robbery with a deadly weapon.  *See* ECF No. 1-1 at 1 (Second Amended Post-Conviction Petition).  At the guilty plea proceeding, the State's Attorney explained the agreement as follows:

> Mr. Savoy is going to tender pleas in case number 03-719 to Count 1 and Count 9, Count 1 being attempted first degree murder, Count 9 being use of a handgun in a commission of a felony.
>
> He is also going to enter a plea to Count 44 in 03-1262, which is a conspiracy to commit robbery with a deadly weapon.
>
> The agreement is that the Court will impose no more than thirty-years active incarceration, and that the sentences on each count would run concurrently.
>
> And, obviously, the State would enter . . . nolle pros the remaining charges at sentencing.

ECF No. 1-1 at 1 (quoting Transcript of April 6, 2004 at 2), *see also* ECF No. 43-1 at 101 (plea agreement).  Judge Nalley then advised Mr. Savoy that he had "agreed not to require [Mr. Savoy] to serve more than thirty years in prison at this juncture in connection with these matters."  ECF No. 1-1 at 2.  Judge Nalley also explained that "any sentences that will be imposed, active or suspended, would run concurrently in relation to one another, meaning along side of one another, rather than end on end in relation to one another."  *Id*.  On June 15, 2004, Judge Nalley imposed a life sentence, all but 30 years suspended, and a five-year period of probation to commence upon Mr. Savoy's release.  *Id*.

On January 3, 2011, Mr. Savoy, through counsel provided by the Public Defender's Collateral Review Division, filed a petition for post-conviction relief.  ECF No. 43-1 at 102-5.  In

that petition, Mr. Savoy argued that the sentence imposed by Judge Nalley was illegal pursuant to Md. Rule 4-243(c) and (d).  *Id*. at 102.  Mr. Savoy contends that Judge Nalley's imposition of a sentence of life with all but 30 years suspended materially altered the terms of the plea agreement and resulted in a sentence greater than that contemplated under the terms of the agreement.

Specifically, Mr. Savoy argued that the underlying facts of his sentencing proceeding and plea agreement were indistinguishable from the facts at issue in *Cuffley v. State*, 416 Md. 568, 7 A.3d 557 (2010).  In that case Mr. Cuffley entered into a binding plea agreement the terms of which stated that, upon acceptance of his guilty plea to robbery, he would be sentenced "within the guidelines."  *Id*. at 573, 7 A.3d 560.  The sentence imposed by the court was a period that exceeded the guidelines but the court suspended all but the part of the sentence that fell within the guidelines.  *Id*.  The guidelines for Mr. Cuffley called for a sentence of four to eight years, however, the court sentenced Mr. Cuffley to "'fifteen years at the Department of Correction, all but six years suspended.'"  *Id*. at 574, 7 A.3d at 560.  The Court of Appeals looked only to the record of the plea proceeding to determine the sentencing term of the plea agreement.  *Id*. at 584, 7 A.3d at 566.  The sentencing court "expressed to [Mr. Cuffley] its understanding of the sentencing term:  'The plea agreement, as I understand it, is that I will impose a sentence somewhere within the guidelines. The guidelines in this case are four to eight years.  Any conditions of probation are entirely within my discretion.'"  *Id*. at 585, 7 A.3d at 567.  There was no mention during the proceeding, or before the court agreed to be bound by the agreement and accepted Mr. Cuffley's plea, that "the sentence referred to executed time only."  *Id*.  "Neither counsel nor the court stated that the court could impose a sentence of more than eight years' incarceration that would include no more than eight years of actual incarceration, with the remainder suspended."  *Id*.  The Court of Appeals then

3

concluded that "a reasonable lay person in [Mr. Cuffley's] position would not understand that the court could impose the sentence it did." *Id*.

The *Cuffley* court found the express terms of Md. Rule 4-243 require strict compliance with the provisions in the rule where a binding plea agreement is in place. *Id*. at 582, 7 A.3d at 565. The court continued:

> We further conclude, as the natural consequence of requiring strict compliance with the Rule, that any question that later arises concerning the meaning of the sentencing term of a binding plea agreement must be resolved by resort *solely* to the record established at the Rule 4-243 plea proceeding. The record of that proceeding must be examined to ascertain precisely what was presented to the court, in the defendant's presence and before the court accepts the agreement, to determine what the defendant reasonably understood to be the sentence the parties negotiated and the court agreed to impose. The test for determining what the defendant reasonably understood at the time of the plea is an objective one. It depends not on what the defendant actually understood the agreement to mean, but rather, on what a reasonable lay person in the defendant's position and unaware of the niceties of sentencing law would have understood the agreement to mean, based on the record developed at the plea proceeding. It is for this reason that extrinsic evidence of what the defendant's actual understanding might have been is irrelevant to the inquiry.
>
> If the record of the plea proceeding clearly discloses what the defendant reasonably understood to be the terms of the agreement, then the defendant is entitled to the benefit of the bargain, which, at the defendant's option, is either specific enforcement of the agreement or withdrawal of the plea. *Solorzano* [*v. State*]*,* 397 Md. [661]at 667-68, 919 A.2d [652]at 656. If examination of the record leaves ambiguous the sentence agreed upon by the parties, then the ambiguity must be resolved in the defendant's favor. *See id.* at 673, 919 A.2d at 659; *see also United States v. Gebbie,* 294 F.3d 540, 552 (3d Cir.2002) (ambiguity in plea agreement is resolved against the government "[b]ecause of the Government's advantage in bargaining power"); *United States v. Jefferies,* 908 F.2d 1520, 1523 (11th Cir. 1990) (ambiguity in a plea agreement must be resolved against the government because a plea "constitutes a waiver of substantial constitutional rights requiring that the defendant be adequately warned of the consequences of the plea." (Internal quotation marks omitted)).

*Id*. at 582-83, 7 A.3d at 565-66.

In a decision dated January 26, 2012, the post-conviction court denied Mr. Savoy's petition. ECF No. 43-1 at 106-13.  The post-conviction court found the facts of Mr. Savoy's case to differ from those at issue in *Cuffley*, noting:

> Looking solely at the record established at the plea proceeding, and giving the words used in the plea agreement their ordinary, usual meaning, it is clear that a reasonable lay person in Petitioner's position at the time of entering the plea would have understood the plea agreement to mean that the agreement only limited his *active* exposure to thirty years incarceration, and did not, at all, limit his exposure to a suspended portion of a sentence above the thirty years.

> Petitioner was advised at the plea proceeding that the maximum penalty for attempted first degree murder was Life imprisonment.  Therefore, the record establishes that the Petitioner was made aware of his potential maximum exposure of active and suspended time.  The term "active incarceration" was used once in the written plea agreement, and twice in open court during the plea hearing.  In using the word "active" as an adjective modifying the noun "incarceration," there creates a connotation that there then must be an "inactive" form of the noun "incarceration."  A reasonable lay person in the Petitioner's position would have recognized this connotation.

> Moreover, Judge Nalley also discussed the agreement in the terms that Petitioner would not be required to "serve more than thirty years in prison at this juncture in connection with these matters."  This statement implies that there would be some period of suspended time imposed above the thirty years active incarceration limit, with a term of probation implied as well.  A reasonable lay person in the Petitioner's position at the plea hearing would have understood and recognized the statement made by Judge Nalley to imply such a meaning.

ECF No. 1-2 at 6-7 (emphasis in original).

Mr. Savoy filed an application for leave to appeal the denial of post-conviction relief which was summarily denied by the Maryland Court of Special Appeals on December 5, 2012.  ECF No. 1-3 (application); ECF No. 1-4 (unpublished per curiam opinion).  The mandate issued on January 7, 2013.  ECF No. 6-3 at 1.

B.      **Federal Habeas Petition**

Mr. Savoy's Petition filed with this court raises only one claim:  that the sentence imposed is illegal under Maryland Rule 4-243(c) because the agreement entered into by Mr. Savoy states that he would "only be receiving 30 years."  ECF No. 1 at 6.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  Under well-established law, federal habeas relief is unavailable "when a petitioner's claim rests solely upon an interpretation of state case law and statutes."  *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Even when a petition raises cognizable claims, the federal habeas statute sets forth a "highly deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:  1) "resulted in a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable application of federal law is different from an incorrect application of federal law."  *Id*. at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts."  *Id*.  "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly."  *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)."  *Id*. at 379.

## ANALYSIS

Mr. Savoy's petition fails for two reasons.  First, he only presented a State law claim to the post-conviction court here and, accordingly, this court has no jurisdiction.  Secondly, even if both the post-conviction petition and this habeas petition are construed as asserting a federal due process claim, Mr. Savoy has not shown that the State court's determination was an unreasonable determination of facts or an unreasonable application of clearly established federal law.

**A.      State Law Claim**

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  In *Ricketts v. Adamson*, 483 U.S. 1, 7 n.3 (1987) the court noted that it "w[ould] not second-guess the [state court's] construction of the language of the plea agreement" because "the construction of the plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law."

Here, the post-conviction court found that Mr. Savoy's plea agreement was not breached, the terms were not ambiguous and, as such, the validity of the guilty plea was not impaired. Importantly, the post-conviction court interpreted the validity of the plea agreement under Md. Rule 4-243 and employed the standard of review announced in *Cuffley* to determine that the terms of Mr. Savoy's plea agreement were not ambiguous.  Mr. Savoy, through counsel, presented his post-conviction claim as one grounded solely in State law, *i.e.*, Md. Rule 4-243 as enforced in *Cuffley*.  ECF No. 43-1 at 102-105 (post-conviction petition).  The post-conviction court differentiated the facts of Mr. Savoy's plea proceedings from those present in *Cuffley*.

To the extent that Mr. Savoy has relied solely on Maryland State law to challenge the validity of his sentence, he has not presented a cognizable claim for federal habeas relief.  *See* 28 U.S.C. § 2254(d)(2).

## B.    Due Process

Mr. Savoy asserts that Md. Rule 4-243(c) and (d) "is no mere rule of procedure.  It is Maryland's codification of Due Process as it applies to plea agreements."  ECF No. 48 at 2.  He further notes that:

> *Cuffley* applied the substance of the *Santobello* holding to a Maryland state sentence via Rule 4-243. The *Cuffley* court held that a defendant who accepted a plea bargain for a sentence "within the guidelines" was sentenced illegally where the suspended portion of the sentence exceeded the guidelines. 416 Md. at 584-86.  This Court has previously considered a similar case as well. In *Mayes v. Galley* this Court considered a § 2254 petition involving a Maryland plea agreement which it found to be "ambiguous as a matter of law" and which the state had breached by failing to make a required sentencing recommendation. 858 F.Supp. 490, 498 (1994). Relying on *Santobello*, this Court remanded the case to the Maryland Circuit Court with instructions to vacate the judgment of conviction and assign a remedy. *Id.*

ECF No. 48 at 3.  The *Cuffley* court also stated that:

9

> The principle purpose of Rule 4-243 is to eliminate the possibility that the defendant may not fully comprehend the nature of the agreement before pleading guilty.  Any less would offend notions of due process.

*Cuffley*, 416 Md. 568, 581 (citing *Santobello v. New York*, 404 U.S. 257, 261-62 (1971)).  At its core, Mr. Savoy's argument asserts that a federal due process claim is implied because his claim depends upon Md. Rule 4-243 and the holding in *Cuffley* and, in his view, that amounts to raising a federal due process claim.  Because that argument has considerable force, the merits of the assumed federal claim will be examined.

The Supreme Court has long recognized that a breach of a plea agreement implicates the due process clause.  *See Santobello*, 404 U.S. at 262 (where a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor" due process mandates that the promise must be fulfilled), *Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause."), *Puckett v. U.S.*, 566 U.S. 129, 136 (2009) (government's breach of "plea agreement obligations . . . is undoubtedly a violation of the defendant's rights."), *Henderson v. Morgan*, 426 U.S. 637, 645 (1976) ("real notice of the true nature of the charges against [defendant is] the first and most universally recognized requirement of due process").  "Plea bargaining jurisprudence necessarily draws upon the law of contracts.  Constitutional concerns, however, counsel restraint in strictly applying principles of commercial law to the criminal law."  *Mayes v. Galley*, 858 F. Supp. 490, 495–96 (D. Md. 1994) (citing *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986)).

When assessed as a federal claim, the post-conviction court's determination that the terms of Mr. Savoy's plea agreement were not ambiguous and were not breached by the sentencing court withstands scrutiny.  The post-conviction court framed the issue before it as "whether the

imposition of a Life sentence, with all but thirty years suspended, exceeds the terms of the plea agreement, thereby violating Rule 4-243(c)(3)."   ECF No. 48-1 at 109-110.   The court then observed that:

> Due process concerns require that the standard governing enforcement and interpretation of plea agreements is one of fairness and equity under the facts and circumstances of the case.  *Cuffley*, 416 Md. at 580.   Nevertheless, plea agreements are likened to contracts, and thus, certain concepts of contract law are generally applicable.  *Id*. at 570-80.   For example, in interpreting plea agreements, the agreement is to be construed as a whole, in order to give effect to all parts, and the words used in the agreement "are to be given their ordinary and usual meaning, in light of the context within which they are employed." *Rankin v. State*, 174 Md. App. 404, 409 (2007).

*Id*. at 110.   In concluding that "no reasonable lay person would conclude that the sentence imposed exceeded the terms of the plea agreement" *id.* at 112, the post-conviction court relied on both the terms of the agreement itself and the manner in which the agreement was explained by Judge Nalley.   First, the agreement itself employed the term "active incarceration" and limited only the "active" term to thirty years.  *Id.* at 111.   The post-conviction court then observed that Mr. Savoy was advised on the record of the "potential maximum exposure of active and suspended time" when the judge advised that attempted first-degree murder carried a life sentence as the maximum penalty that could be imposed.  *Id*. at 111.   Lastly, the explanation provided to Mr. Savoy by Judge Nalley indicating that he "would not be required to 'serve more than thirty years in prison <u>at this juncture</u> in connection with these matters'" implied "there would be some period of suspended time imposed above the thirty years active incarceration limit, with a term of probation implied as well." *Id*.

The post-conviction court's findings of fact that led to the conclusion that Mr. Savoy's plea agreement was neither ambiguous nor was it breached, are not unreasonable.   To the extent that Md. Rule 4-243 and the holding in *Cuffley* are, as Mr. Savoy would have it, *in pari materia* to the

Fourteenth Amendment's due process clause, the post-conviction court's findings of fact regarding the terms of the plea agreement and advisement by the sentencing court are presumed correct. *See* 28 U.S.C. § 2254(e)(1). Mr. Savoy bears the burden of rebutting this presumption with clear and convincing evidence. He has not done so. His subjective view that the plea agreement meant he would only receive a thirty-year term and would not receive a suspended sentence, does not suffice as clear and convincing evidence. The court must credit the post-conviction court's finding as presumptively correct. Mr. Savoy has provided no basis for this court to find habeas relief is warranted on this ground.

Moreover, even if this court disagreed with the post-conviction court's findings, federal habeas relief is unavailable. The post-conviction court's analysis did not involve "a conclusion opposite to that reached by [the Supreme] Court on a question of law," nor were the facts in Mr. Savoy's case "materially indistinguishable from a relevant Supreme Court precedent." *Williams*, 529 U.S. at 40. "At bottom, 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *United States v. Warner*, 820 F.3d 678, 683 (4th Cir. 2016) (quoting *Santobello*, 404 U.S. at 262). Mr. Savoy was promised he would receive active incarceration of thirty years and that promise, as analyzed by the post-conviction court, was fulfilled.

Mr. Savoy has failed to carry the heavy burden of demonstrating that the post-conviction court's decision is contrary to, or an unreasonable application of, clearly established federal law, or that it is rooted in an unreasonable determination of the facts in light of the evidence presented to the state court. 28 U.S.C. § 2254(d)(1)-(2). Accordingly, Mr. Savoy's federal due process rights were not violated.

Analysis of Mr. Savoy's claim as either a State law claim or a federal due process claim, leads to the same conclusion:  he has not presented a claim on which federal habeas relief may be awarded and his Petition must be denied.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied.  *See* 28 U. S.C. § 2253(c)(2).  Mr. Savoy may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

March 17, 2022          /s/

            DEBORAH K. CHASANOW
            United States District Judge